IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:14-CR-43-1H

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>)<br>)<br>)<br>v. )<br>)<br>)<br>)<br>)<br>SHAWN SCOTT FONVILLE, )<br>)<br>Defendant. ) | **MEMORANDUM AND**<br>**RECOMMENDATION** |

This matter is before the court on Defendant's motion to suppress [DE #24], which has been referred to the undersigned for memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). The Government has responded in opposition to the motion to suppress. To further develop the record, the undersigned conducted an evidentiary hearing on August 20, 2015, at which the Government and Defendant, with counsel, appeared. Accordingly, the matter is now ripe for decision.

**STATEMENT OF THE CASE**

On May 27, 2014, a federal grand jury returned an indictment charging Shawn Scott Fonville ("Fonville") with one count of possession with intent to distribute a quantity of heroin, in violation of 21 U.S.C. § 841(a)(1), and one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g) and 924. (Indictment [DE #1] at 1.)

On June 16, 2015, Fonville filed the instant motion to suppress physical evidence seized pursuant to a warrantless search, as well as statements made by Fonville following the search and seizure. Fonville contends that the officers did not have reasonable suspicion to conduct an

investigatory stop pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968), and that all physical evidence seized as a result of his encounter with the officers must, therefore, be suppressed. Fonville further argues that his statements to the officers must be suppressed as fruits of the poisonous tree and, alternatively, that certain statements were obtained in violation of his *Miranda* rights. The government argues that the officers had reasonable suspicion, supported by articulable facts, to believe that Fonville was in possession of a weapon reportedly involved in a domestic dispute and that the physical evidence was obtained as the result of a lawful stop and protective frisk.

## STATEMENT OF THE FACTS

At the evidentiary hearing on Defendant's motion, the court heard the testimony of Corporal John A. Dearmitt ("Dearmitt") of the New Hanover County Sheriff's Office and Officer Felice Fengill ("Steinberg")[1] a law enforcement officer previously employed with the Wilmington Police Department. Based upon their testimony and the exhibits admitted into evidence, the undersigned makes the following findings of fact.

Dearmitt and Steinberg were assigned to the Wilmington Housing Authority Task Force and, on January 30, 2014, were dispatched to the Houston Moore Housing Complex, which is known as a high-crime area. Around 8:00 p.m. a 911 call was received from 1611 Moore Plaza reporting a domestic dispute involving a weapon. Officer Joseph Clark ("Clark") of the Wilmington Police Department was the first officer to arrive at the scene. Dearmitt arrived around 8:25 p.m. and noticed a white Grand Marquis parked in front of Clark's vehicle. Upon arriving, Dearmitt observed that Terrence Miller ("Miller"), known to Dearmitt as a resident of the housing complex, was being detained by Clark and was in handcuffs. Steinberg was standing

---

[1] At the time of the incidents giving rise to this action, Officer Fengill was known by the name of Felice Steinberg. The undersigned refers to her as "Steinberg" for the sake of consistency with the police reports referring to her by that name.

a few yards away from Clark and Miller with Selena Borom ("Borom"), the individual who had placed the 911 call. Borom had been staying with Miller at 1611 Moore Plaza and was moving her belongings out of the residence. As Clark and another officer went to search and secure the apartment, Dearmitt remained with Miller. With his hands cuffed behind his back, Miller motioned to the white Grand Marquis and told Dearmitt "There's a gun in that car." Borom made a similar statement to Steinberg, pointing to the white Grand Marquis. Steinberg then approached Dearmitt and informed him that Borom said there was a gun in the car. A male individual, later identified as Fonville, was standing near the rear quarter panel on the passenger side of the vehicle.

Clark had exited the apartment building having found no weapons when Dearmitt and Steinberg turned their attention to the white Grand Marquis, which was forty or fifty yards away. Dearmitt and Steinberg thought Fonville may have had some involvement in the domestic incident being investigated and began walking toward the car. They slowly made their way to the car because the ground was icy. Upon seeing the officers approach, Fonville walked around the vehicle and entered the driver's side of the vehicle. Dearmitt knocked on the windows, which were tinted, and asked for identification. Fonville produced a New York identification card and complied with Dearmitt's request to exit the vehicle.

Dearmitt conducted a weapons frisk, first asking Fonville to place his hands on the car, then patting him down for weapons. As he was patting Fonville down, Dearmitt felt a square lump in the pocket of Fonville's jacket. Based upon his training and experience, Dearmitt believed the item to be a bundle of heroin. Dearmitt stopped frisking Fonville and asked what was in his pocket. Fonville stated that it was heroin, and Dearmitt then reached into Fonville's pocket and retrieved the 1 inch by 1 inch by one-quarter inch thick block, which turned out to be

3

two bundles (20 bindles in all) of heroin bound together with rubber bands. Dearmitt continued searching Fonville and discovered what appeared to be a crack rock. At that point, Fonville was detained and placed into Dearmitt's patrol car. Two other occupants were removed from the vehicle, frisked for weapons and detained. No weapons were found on Fonville or the other two occupants.

Steinberg and Dearmitt then began searching the vehicle. Located on the front seat, underneath a jacket between the driver's seat and the passenger's seat, were a black gun holster and empty magazine, as well as a pair of brass knuckles. After searching the rear passenger area, Steinberg opened the trunk compartment. The trunk was full of women's clothing and other personal belongings. Protruding from a suitcase or duffel bag containing clothing and in plain view was the trigger of a 9 mm semi-automatic handgun. Upon inspection, it was determined that the handgun was loaded and matched the magazine and holster found in the front seat of the vehicle.

Fonville was transported to the Wilmington Police Department and interviewed by Dearmitt and another officer. Fonville waived his Miranda rights and stated that he had come to the Houston Moore Housing Complex to help Borom retrieve her belongings from 1611 Moore Plaza. Fonville told the officers that he brought the gun with him for protection and had concealed it in his waistband.

## **DISCUSSION**

The Fourth Amendment guarantees the right of the people to be secure against unreasonable searches and seizures of "their persons, houses, papers, and effects." U.S. Const. amend. IV. "This inestimable right of personal security belongs as much to the citizen on the streets of our cities as to the homeowner closeted in his study to dispose of his secret affairs."

4

Case 7:14-cr-00043-H   Document 40   Filed 10/05/15   Page 4 of 9

*Terry v. Ohio*, 392 U.S. 1, 8-9 (1968). The "[t]emporary detention of individuals . . . by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of this provision." *Whren v. United States*, 517 U.S. 806, 809-10 (1996). Thus, an officer may conduct an investigatory stop of an individual only when the officer has a reasonable, articulable suspicion that the individual may be involved in criminal activity. *United States v. Arvizu*, 534 U.S. 266, 273-75 (2002). Whether reasonable suspicion exists to support such a stop is a factual question "not readily, or even usefully, reduced to a neat set of legal rules, but, rather, entails commons sense, nontechnical conceptions that deal with factual and practical considerations of everyday life on which reasonable and prudent persons, not legal technicians, act." *United States v. Foreman*, 369 F.3d 776, 781 (4th Cir. 2004). "Reasonable suspicion is a 'less demanding standard than probable cause,' requiring a showing 'considerably less than preponderance of the evidence.'" *United States v. Jones*, 289 Fed. App'x 593, 597 (4th Cir. 2008).

In connection with an investigatory stop, an officer may conduct a limited search or frisk for weapons if he is justified in believing that the person stopped may be armed and dangerous. *Terry*, 392 U.S. at 24. The purpose of such a frisk is "to allow the officer to pursue his investigation without fear of violence." *Adams v. Williams*, 407 U.S. 143, 146 (1972). "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry*, 392 U.S. at 27.

Fonville contends that the officers did not have reasonable suspicion to detain him based upon Miller's tip that there was a gun in the vehicle. In so arguing, Fonville correctly notes that Miller did not accuse Fonville or anyone else of illegal activity, nor did Miller allege Fonville's

5

Case 7:14-cr-00043-H   Document 40   Filed 10/05/15   Page 5 of 9

involvement with a gun. As a consequence, Fonville argues, the officers had no reasonable suspicion to believe that criminal activity was afoot, and their detention of Fonville was, therefore, unreasonable.

What Fonville's argument fails to recognize is that the officers' actions in this case were not premised solely upon a tip. Rather, the officers were engaged in the investigation of a domestic dispute reportedly involving a firearm in a high crime area. Although the suspect (Miller) was in custody, no weapon had been located on his person, in the residence or on the complainant. The officers were advised, not only by Miller but also by Borom, that there was a gun in the white Grand Marquis parked approximately fifty yards away. Based upon these facts, it was reasonable for the officers to believe that the weapon for which they were searching was located in the vehicle and was potential evidence of a crime. Fonville had been loading Borom's belongings into the vehicle but, as the officers approached, Fonville entered the driver's seat of the vehicle, giving the officers reason to suspect they needed to take action in order to prevent Fonville from absconding with evidence. *See Kentucky v. King*, 563 U.S. 452, 131 S. Ct. 1849, 1856 (2011) ("[T]he need 'to prevent the imminent destruction of evidence' has long been recognized as a sufficient justification for a warrantless search.").

Based upon the totality of the circumstances known to the officers, the officers also had reasonable suspicion to conduct an investigatory stop and frisk of Fonville. It cannot seriously be debated that the presence of a firearm during the investigation of a violent domestic incident may reasonably pose a threat to the safety of officers or others. While involved in such an investigation, Dearmitt and Steinberg were informed by two separate sources that there was a firearm in the white Grand Marquis. Turning their attention to the car, the officers saw Fonville standing on the passenger side, near the rear of the vehicle. As Fonville saw the officers

approaching, he walked around the vehicle and entered the driver's side as if to avoid the officers. Based upon the information known to the officers and Fonville's behavior, it was reasonable for the officers to suspect that Fonville may have been involved in the domestic incident or be in possession of a firearm involved in the incident. The vehicle's tinted windows and the lateness of the day made it difficult to see inside the vehicle, providing additional reason to believe that a safety threat may be posed by the vehicle and its occupants. Given the totality of the circumstances, it was not unreasonable for the officers to briefly detain and frisk Fonville for weapons. Upon frisking Fonville, Dearmitt immediately recognized an object in his pocket to be heroin. Accordingly, Dearmitt was justified in seizing the contraband pursuant to the plain feel exception recognized in *Minnesota v. Dickerson*, 508 U.S. 366 (1993). As a consequence, Fonville's motion to suppress the physical evidence should be denied. The officers' stop and attendant frisk of Fonville being reasonable, Fonville's argument that his subsequent statements should be suppressed as fruits of the poisonous tree should be rejected.

At the evidentiary hearing in this matter, Fonville was allowed to amend his suppression motion to argue that any unMirandized statements made by him should be suppressed in light of Dearmitt's testimony. Specifically, Fonville argues that upon recognizing the object in Fonville's pocket to be heroin, Dearmitt was required to Mirandize Fonville prior to questioning him about the contents of his pocket. *Miranda* warnings are required only when an individual is subject to custodial interrogation. "A suspect is 'in custody' for *Miranda* purposes if the suspect has been formally arrested or if he is questioned under circumstances in which his freedom of action is curtailed 'of the degree associated with a formal arrest.'" *United States v. Leshuk*, 65 F.3d 1105, 1108 (4th Cir. 1995) (quoting *Stansbury v. California*, 511 U.S. 318, 322 (1994)). Pursuant to *Terry*, an officer may temporarily detain an individual for purposes of questioning

7

Case 7:14-cr-00043-H   Document 40   Filed 10/05/15   Page 7 of 9

when reasonable suspicion exits to believe that the individual is engaged in criminal activity. *Id.* at 1109. Absent coercive or intimidating behavior, such a limited intrusion into an individual's privacy does not transform a lawful *Terry* stop into a custodial interrogation. *Id.* at 1109-10.

In this case, Dearmitt had reasonable suspicion, upon frisking Fonville, to believe Fonville was in possession of a controlled substance. As a consequence, he did not exceed the permissible scope of *Terry* by simply inquiring of Fonville as to the contents of his pocket. Because Fonville was not in custody when questioned about the contents of his pocket, he was not entitled to *Miranda* warnings at that time, and the statements made prior to his arrest are not subject to suppression on this ground.

## **CONCLUSION**

For the foregoing reasons, the undersigned RECOMMENDS that Defendant's Motion to Suppress [DE #24], as orally amended at the hearing of this matter, be DENIED.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until October 22, 2015, to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.,* 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

A party that does not file written objections to the Memorandum and Recommendation by the foregoing deadline, will be giving up the right to review of the Memorandum and

8

Case 7:14-cr-00043-H   Document 40   Filed 10/05/15   Page 8 of 9

Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, a party's failure to file written objections by the foregoing deadline may bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).

This 5th day of October 2015.

_____
KIMBERLY A. SWANK
United States Magistrate Judge